UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRIAN SMITH,

        Plaintiff,           :
                             :
v.                          :     C.A. NO. 2021 -
                             :
PRUDENTIAL INSURANCE COMPANY  :
OF AMERICA,
                             :
        Defendant.          :

## COMPLAINT

### 1. The Parties

1.      Plaintiff Brian D. Smith ("Plaintiff" or "Mr. Smith") was at all relevant times and currently is a citizen and resident of the State of Rhode Island. Plaintiff's current address is #154338, PO Box 8274, Cranston, R.I. 02920.

2.      Defendant Prudential Insurance Company of America ("Prudential") is a business entity registered to do business in and which has engaged and engages in the business of insurance in Rhode Island. Prudential Ins. is not a citizen of Rhode Island. Prudential's business address is 751 Broad Street, Newark, New Jersey, 17102.

### II. Nature of Action

3.      This is a civil action brought pursuant to, and is governed by, the Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, et seq. By this civil action, Mr. Smith seeks to enforce his rights under a long-term disability plan (the "Plan" or "Policy") which plan is funded by and administered by Prudential. Mr. Smith seeks to have Prudential reinstate his long-term disability benefits under the Plan from the date of its termination, May 3, 2018, be awarded his long-term disability benefits retroactively, with interest thereon, and prospectively, be compensated for any loses he has sustained, and be awarded statutory penalties

and attorney fees as is authorized and provided by ERISA. See 29 U.S.C.: §§ 1132 (a)(1)(B),

1132 (a)(3)(B), 1132 (c)(1)(B)(1), and 1132 (g).

### III.    The Terms of The Plan Compel Payment of Disability

### Benefits to Mr. Smith

4.      The Plan provides, in relevant part, that Prudential shall pay to Mr. Smith long-term

disability ("LTD") payments if he is "disabled…due to sickness…[and which sickness renders

him] unable to perform the **material and substantial duties of [his] own occupation**."

(emphasis in original) The Plan was drafted by Prudential.

5.      Prudential must agree that if Mr. Smith suffers from mild cognitive impairment which

causes him to be "unable to perform for wage or profit, the **material and substantial duties** of

your [Mr. Smith's] **own occupation,**" and therefore he is considered disabled under the Plan and

is entitled to be paid his LTD benefits.

6.      Prudential, however, contends that Mr. Smith is not entitled to his LTD benefits under the

Plan because, it says, he is not disabled as is defined in the Plan.

7.      After twice determining Mr. Smith was disabled per the Plan definition, Prudential chose

to terminate Mr. Smith's disability benefit rights under the Plan and stopped paying him his LTD

benefits as of May 3, 2018, and continues to refuse to pay him his LTD benefits.

8.      Several critical points require close consideration. First, the Plan is to be enforced

according to its clear, plain and certain terms and, if there were any ambiguity in those terms,

and Mr. Smith submits there is none, the language of the Plan is to be interpreted against

Prudential.

9.      Second, the terms of the Plan do not provide that Mr. Smith need be suffering from a

particular ailment, such as alzheimer's or dementia, to be considered disabled under the Plan.

10.     Third, the Plan provides that Mr. Smith need only establish that he cannot perform the

2

duties of his <u>own</u> occupation in order to be considered disabled under the Plan.

### IV. <u>Jurisdiction and Venue</u>

11.    Prudential has engaged and does engage in the business of insurance in Rhode Island.

12.    Prudential, having engaged in and engaging in the business of insurance in Rhode Island, makes it subject to the laws and regulations of Rhode Island.

13.    Prudential issued an insurance policy, Group Policy No. 16430 ("Policy"), under which Mr. Smith, as a resident of Rhode Island, is a beneficiary. The Group contract number is GZ-14273. (The documents referenced in the Complaint are part of the Prudential claim file per the representation of Prudential.  See letter of Ms. Kelly Crocker to Ms. Frost of January 19, 2021.) (To the extent a document referenced in the Complaint is not part of that file, Mr. Smith attaches it as an exhibit hereto.  If necessary, Mr. Smith reserves his right to ask the Court to consider each such exhibit in the Court's decision-making process.)

14.    Prudential's Policy provides benefits to Mr. Smith in the form of life, accident and long-term disability insurance, the latter of which is referenced as a "Long-Term Disability Plan."

15.    Prudential's business activities in Rhode Island, particularly issuing the subject Policy to Mr. Smith as a resident of Rhode Island, supports this Honorable Court's exercise of its jurisdiction over Prudential.

16.    Pursuant to 29 U.S.C. §§ 1132 (e)(1) and (2) this Court has subject matter jurisdiction over this civil action.

17.    Venue is proper in this Court pursuant to 29 U.S.C. § 1132 (e)(2).

### V. <u>The Plan and Prudential's Violation of Its Duties and Obligations</u>

18.    The Plan is an employee benefit plan underwritten by Prudential.  Prudential serves as Claims Administrator of the Plan.  As such, Prudential is responsible for deciding claims in its role as the Plan fiduciary.  29 U.S.C. § 1002 (21)(A).

19.     Prudential, as the underwriter of the Plan, is responsible for paying Plan benefits to the beneficiaries, such as Mr. Smith, from its own financial resources.

20.     As a result of Prudential's dual role as Claims Administrator, with authority to administer the Plan, and Underwriter and payor of benefits, Prudential has a structural conflict of interest.

21.     Moreover, for the reasons and factors set forth herein, such as, but not limited to the Prudential: (a) ignoring the plain, clear terms of the Plan's definition of disabled; (b) employing a tortured interpretation of the language of the Plan; (c) repeatedly insisting that Mr. Smith was not disabled from working "in any capacity," or "at all," when that is not the definition of disabled in the Plan; (d) giving incorrect information to its retained doctors; (e) misleading Mr. Smith by telling him there was no evidence of a specific medical ailment, rendering him disabled, when the Plan language does not require proof of a specific ailment; and (f) failing to provide its complete claim file to Mr. Smith.

22.     All of these facts, amongst others, demonstrate the unfortunate failure of Prudential to make a bona fide effort to evaluate fairly Mr. Smith's disability claim in violation of ERISA.

23.     This conduct mandates that Prudential's claimed discretionary authority to determine whether Mr. Smith is entitled to LTD benefits be rejected, even assuming that the discretionary clause in the Plan is not found violative of Rhode Island law, which Mr. Smith does not concede: (See R.I.G.L. §§ 27-18-1 and 27-18-79 (a) which prohibit discretionary review clauses in insurance policies issued to Rhode Island residents.)

24.     Mr. Smith is a qualified participant and beneficiary under the Plan.

25.     Mr. Smith has satisfied all of his obligations under the Plan, including making timely payment of all premiums and providing promptly documents to Prudential it requested, including medical records, in pursuing his claim for LTD benefits. Mr. Smith's good faith in so cooperating is all the more impressive considering his difficult circumstances (confined to a

Rhode Island facility).

26.     As to Mr. Smith's good faith effort to cooperate and provide Prudential with all requested information and documents, see, in addition to Prudential's multiple letters confirming such effort, Mr. Smith's letters of June 27, 2018, June 28, 2018, July 3, 2018, August 25, 2018, September 25, 2018, October 20, 2018, March 1, 2019, April 26, 2019, May 25, 2019, June 6, 2019, July 11, 2019, July 17, 2019 and July 18, 2019.

27.     Prudential, as Claims Administrator, serves in a fiduciary capacity, see 29 U.S.C. § 1002 (21)(A), and is required under ERISA to perform its duties faithfully in accordance with the Plan "solely in the interest of the participants and beneficiaries…" and for the exclusive purpose of providing benefits to participants…," such as Mr. Smith.  See 29 U.S.C. § 1104 (a)(1)(A)(i).

28.     The Plan mandates that Prudential pay LTD benefits to Mr. Smith if, because of a "sickness," he is "unable to perform, for work and profit, the **material and substantial duties** of… [his] **own occupation**…." (emphasis in original).  At page 13.

29.     The Plan does not require Mr. Smith to be suffering from a particular illness, such, alzheimer's or dementia, to be paid his LTD benefits.  Any sickness causing Mr. Smith to be unable to perform the material and substantial duties of his own occupation qualifies Mr. Smith to be paid his LTD benefits per the Plan.

30.     Mr. Smith repeatedly stressed and emphasized to Prudential throughout the claim review process that the basis of his disability claim was his mild cognitive impairment, and not a specific ailment.  See, e.g., letters of Mr. Smith to Prudential Ins. of June 28, 2018, August 25, 2018 and May 25, 2019.  (Collectively herein referred to as "Smith MCI letters.")

31.     In accordance with the terms of the Plan, Mr. Smith is entitled to LTD benefits in an amount of no less than $375,000, i.e., $3000/month for the time period from May 3, 2018, when Prudential improperly deemed Mr. Smith not eligible to receive his LTD benefits, until October

1, 2028, when Mr. Smith (DOB – October 1, 1961) reaches age 67, as is provided for by the Plan.

## VI.  Mr. Smith

### A.  Background

32.    Mr. Smith is a Certified Public Accountant licensed in both Rhode Island and Massachusetts.  He is also a Six Sigma and Lean Management expert.

33.    He received his B.S. Business Administration, Accounting (1984), with a 3.4 GPA. Masters of Science in Taxation (1989), with a 3.5 GPA; and Certificate of Advanced Studies in Taxation (1996) from Bryant University, with a 3.6 G.P.A.

34.    Over the course of his employment history, he has served as Senior Tax Accountant for Ernst & Young and Senior Tax Analyst; International Tax Manager; Director of International Treasury Planning, Vice President; Treasury and Tax, Director, Industrial Tax, Director, Corporate Tax; and Tax Vice President for Textron Inc.

35.    Further, he has held other positions as: Senior Director Global Tax (Head of Worldwide Tax) at 3 Com Corporation; Senior Director, Global Tax Function, GTech/Lottomatica; and Director Tax Reporting at Perkin Elmer, Inc.

36.    As of about mid-2015, Mr. Smith was employed by Comverse, Inc., in the position of Vice President Global Tax Operation and Strategy.

37.    In that position, Mr. Smith was responsible for, *inter alia:* (a) global integration, staffing, training and coordinating four regional tax offices having eleven (11) tax professionals located in the United States, United Kingdom, Germany and Israel; (b) developing comprehensive global tax strategies and implementing processes for the mitigation of world-wide tax; (c) preparing SEC reports; and (d) oversight for global income and VAT compliance and audit defense.

38.    This significant corporate position, with its multiple, complex responsibilities, requires a

6

sharp and keen memory, strong mental acuity, concentration, focus, analysis and multitasking, among other cognitive attributes.

39.     Over the course of Mr. Smith's distinguished career as an International Tax, Treasury and Finance expert, he has, *inter alia*: (a) developed merger and acquisition structures and conducted post-acquisition financial integration; (b) conducted extensive domestic and international tax reviews and analysis; (c) completed 10 Six Sigma Black Belt projects which achieved annual savings of $4 million while participating in the Textron Six Sigma Program; (d) eliminated U.S. tax exposure on several hundred million dollars of cross-border inter-company transactions; (e) nationalized European VAT compliance under a single service provider; (f) formulated and implemented a cross-border inter-company R&D subcontract relationship that created a favorable tax rate arbitrage and avoided outbound royalty payments; and (g) pioneered the infrastructure to capture and update E&P and tax pools for foreign operations.  These accomplishments required and requires a mastery of the every changing principles of taxation, finance and accounting in dozens of countries, states and provinces and the mental skills and abilities, such as concentration, focus and memory, to apply those accounting principles to create tax favored structures to cross-border transactions.

### B.  Mr. Smith's Disability

40.     On August 12, 2015, after noticing a decline in his mental state for about a year, i.e., memory deficits, impaired organization of thought and inability to engage in activities at the same level as he had previously, Mr. Smith sought medical care and treatment at Lahey Health ("Lahey".)

41.     He reported to Dr. Fritz, at Lahey, one of his treating doctors, that he had memory problems that had been ongoing for some time.

42.     Mr. Smith told Dr. Fritz that his wife was concerned about his mental status.

43.    As reported by Dr. Fritz, Mr. Smith worked as a team leader for an accounting company.

44.    He also shared with Dr. Fritz his understandable concern that because his memory deficiencies were worse and more pronounced at work, he was afraid that his mental problems/decline could damage his career.

45    Dr. Fritz performed a medical examination of Mr. Smith.

46.    Dr. Fritz assessed Mr. Smith's medical issues as short-term memory loss and poor concentration.

47.    Dr. Fritz referred Mr. Smith for a neurological consultation.

48.    On August 21, 2015, Mr. Smith was examined by Yuval Zabar, M.D., Center for Memory and Aging, Lahey.

49.    Dr. Zabar noted that Mr. Smith's father suffered from alzheimer's disease and that his paternal grandmother was afflicted with dementia.

50.    Dr. Zabar observed Mr. Smith's difficulties, particularly "[d]ecline at work, [T]rouble remembering facts and figures, names, [T]racking projects, tasks, time sequence…, forgett[ing] details of conversations…, [and] E-mails need more proofreading due to using wrong words." Dr. Zabar also reported that Mr. Smith's "[w]ife and coworkers [were] mentioning this to him in [the] past 6 months."

51.    Dr. Zabar further noted that Mr. Smith had "increasing frustration and apprehension at work."

52.    At the August 21, 2015 examination, Mr. Smith's past medical history included "memory loss."

53.    Dr. Zabar's diagnosis was memory loss, stating that he "wonder[ed] whether there is a mild degree of executive dysfunction."

54.    Dr. Zabar referred Mr. Smith for a neuropsychological evaluation.

8

55.    On September 17, 2015, Caitlin E. Macaulay, Ph.D./ABPA, Board Certified
Neuropsychologist, Lahey, conducted a neuropsychological examination of Mr. Smith.

56.    Mr. Smith arrived 40 minutes late to his examination because "he drove to Lexington,
instead of Peabody."

57.    Dr. Macaulay recorded the problems facing Mr. Smith, including "at least a 1 year
history for gradual onset for progressive cognitive decline…[which has] negatively impacted his
work… experiencing difficulty being able to provide spontaneous guidance [to employees] and
to be able to quickly retrieve information that should be familiar/over learned…understanding
the structure or framework of what a client needs, [and not] efficiently providing
responses,…[and not] recalling conversations, [and] not leading discussions as much as he has in
the past, [and] not recalling the resolution of an issue…."

58.    Further, Dr. Macaulay reported that Mr. Smith also experienced "a decline for
multitasking, increased tendency to become overwhelmed, less efficient decision making, slower
processing speed,…memory difficulties with increased tendency to misplace items,…difficulty
recalling reading material,…[and] retrieving conversations,…[and suffering] slower retrieval of
facts,…[and] difficulty recalling if he had previously met an individual, increased reliance on
notes and reminders, and difficulty recalling recently completed tasks."

59.    Dr. Macaulay observed that his sister also suffered from "memory impairment," which is
the third member of Ms. Smith's family with memory problems.

60.    Dr. Macaulay decided that Mr. Smith should undergo a comprehensive
neuropsychological evaluation.

61.    That evaluation was conducted by Dr. Macaulay on September 18, 2015.

62.    Dr. Macaulay's evaluation included no less than twenty-four (24) neuropsychological
procedures/tests.

63.    Importantly, based upon her extensive examination of and testing of Mr. Smith, Dr. Macaulay concluded that Mr. Smith "does meet diagnostic criteria for mild cognitive impairment - most consistent with the amnesic type." September 18, 2015 neuropsychological evaluation, at page 11. (MCI, as the medical literature explains, is not a form of dementia, but, rather, a separate medical condition.)

64.    Dr. Macaulay provided Mr. Smith an extensive list of recommendations for coping with his cognitive impairment, including "limiting multitasking,...completing one task at a time,...designat[ing] specific locations for frequently misplaced items...he and his wife...cooperatively manag[e] the finances...[and he be given] appropriate and adequate support."

65.    Dr. Macaulay recommended that Mr. Smith follow up with Dr. Zabar, but because Dr. Zabar was unavailable to see Mr. Smith on October 5, 2015, Mr. Smith was treated by Jed A. Barash, M.D., Lahey, board certified in occupational medicine.

66.    Based upon his examination of Mr. Smith, Dr. Barash concluded that Mr. Smith's "picture is consistent with mild cognitive impairment, primarily amnestic in nature and...[h]e would not be expected to return to work as his condition is not anticipated to improve," See Attending Physician's Statement of Dr. Barash of November 22, 2015, and Dr. Barash (Lahey) October 5, 2015 records.

67.    Dr. Barash told Mr. Smith that he would suffer a 20% decline each and every year, and spoke to Mr. Smith "about disability as an option."

68.    Dr. Christopher Salas, based upon his neurological consultation on March 24, 2017 recorded that Mr. Smith had a "dx [diagnosis] of MCI" and recorded that "the main finding...is inattention, difficulty and also poor [illegible] sequencing c/w [connected with] frontal lobe dysfunction...."

10

69.    Stavros, during his neurological consultation of Mr. Smith on June 26, 2019, cautioned Mr. Smith of the "risk of progression…[with] MCI [mild cognitive impairment]…."

## VII.  Claim History

70.    On October 31, 2015, Mr. Smith ceased working as Vice President of Global Tax Operation Strategy, Comverse, Inc.

71.    In the fall of 2015, Mr. Smith initiated his request with Prudential for long-term disability benefit payments.

72.    After about two (2) months review of Mr. Smith's medical records, Prudential approved Mr. Smith's LTD claim.  See Prudential letter of January 5, 2016.

73.    The medical records reviewed by Prudential included those of Drs. Fritz, Zabar, Macaulay and Barash.

74.    In October 6, 2017, Mr. Smith underwent a neuropsychological examination conducted by Geoffrey Tremont, Ph.D., who issued a report dated October 6, 2017.

75.    In his October 6, 2017 report, at unpaginated page 2, (references herein to unpaginated and paginated pages will hereafter be denominated as "at page _____.") Dr. Tremont noted that Mr. Smith had "a complete workup at the Lahey," and that Dr. Macauley had performed "a comprehensive neuropsychological evaluation…on 9/14/15… [and she found her] [t]est results…to be valid.…[and that] Dr. Macaulay concluded that…[Mr. Smith] met criteria for mild cognitive impairment, amnestic type."

76.    Dr. Tremont believed that because Mr. Smith performed poorly on two measures of effort and performance, questions concerning Mr. Smith's effort were raised.  Report of Dr. Tremont October 6, 2017, at page 3.

77.    Nevertheless, Dr. Tremont interpreted the test results and concluded that Mr. Smith's "[l]ist learning was moderately impaired with severely impaired delay recall and

recognition;…[and Mr. Smith's] "copy of a complex figure was mildly impaired…free recall was moderately impaired." Report of Dr. Tremont October 6, 2017, at page 3.

78.     Dr. Tremont did not opine that Dr. Macaulay's diagnosis of mild cognitive impairment was wrong.

79.     Of significance, Dr. Tremont observed that Mr. Smith's "failed effort testing does not rule out a possibility that he has MCI…." (emphasis added.) October 6, 2017 Report of Dr. Tremont, at page 4.

80.     Prudential, based in part on Dr. Tremont's opinions as set forth in his October 6, 2017 report, reinstated Mr. Smith's LTD benefits in November 2017, which had been suspended only because of a lack of certain information. See Prudential letters dated November 17, 2017, at page 1, and November 13, 2018, at pages 1-2.

81.     Thus, as of November 2017, Prudential had again found Mr. Smith disabled under the Plan.

82.     In 2018, in a seeming effort to find support to reverse its determination of finding Mr. Smith disabled, Prudential retained the services of a neuropsychologist, Kristin Fiano via a business entity (PsyBar, LLC), which entity provides the services of doctors to review disability claims for insurance companies. See Prudential letter to PsyBar of February 21, 2018.

83.     PsyBar, LLC, explains on its website that its mental health forensic doctors perform forensic assessment for insurers, including for disability claims.  No mention is made in its Website of PsyBar providing services for claimants.  (Exhibit A).

84.     Dr. Fiano conducted only a "file review".  Page 1 of Dr. Fiano's April 30, 2018 report ("Fiano report") and PsyBar May 1, 2018 invoice.

85.     Dr. Fiano did not examine Mr. Smith.

86.     Based upon, in part, a report dated April 30, 2018, issued by Dr. Fiano, Prudential

determined that Mr. Smith was not disabled and that no benefits were payable beyond May 3, 2018. See Prudential letter dated May 3, 2018, at pages 1 and 6.

87.     Prudential, in its May 3, 2018 letter reviews Dr. Fiano's report, highlighting in the Dr. Fiano report what it believed supported its termination decision. Because of the great reliance of Prudential on Dr. Fiano's report in making its termination decision, Mr. Smith below explores Dr. Fiano's opinions as stated in her report and also examines Prudential's explanation of its termination determination.

88.     The review by Dr. Fiano included reviewing Dr. Tremont's October 6, 2017 report, which report had previously served as a basis for Prudential concluding that Mr. Smith was disabled. See Prudential's letter of November 17, 2017.

89.     In its February 21, 2018 letter to PsyBar, Prudential provided a series of questions to be answered by Dr. Fiano concerning whether Mr. Smith was suffering from dementia.

90.     Surprisingly, and unfortunately, Prudential incorrectly states to Dr. Fiano that "The clamant and his providers noted he is diagnosed with dementia." Fiano Report, at page 6 ("Fiano Report"), and Prudential's February 21, 2018 letter to PsyBar, at page 1.

91.     But, Mr. Smith never asserted that he suffered dementia and Mr. Smith's doctors, Fritz, Zabar, Macaulay, Barash, and Tremont, never used the word "dementia" in diagnosing Mr. Smith's medical problem.  See medical reports and Mr. Smith MCI letter.

92.     Mr. Smith's basis for his claim for payment of his LTD benefits is his mild cognitive impairment, as he repeatedly emphasized to Prudential.  See Smith MCI letters.

93.     Further, Dr, Fiano makes a striking inaccurate statement in her report where she states that there were "AP [attending physician, Dr. Ted Barash] statements that the claimant had dementia...." At page 11. This is factually not true.  Dr. Barash did not make any such statement. See Dr. Barash Physician Statement of 11/22/15, nor did any other of Mr. Smith's doctors.

94.     Turning now to any possible relevant findings of Dr. Fiano, first, she ruled out that any medication impacted Mr. Smith's cognitive functioning. Fiano report, at page 11.

95.     Second, Dr. Fiano observed that Dr. Macaulay concluded that Mr. Smith "put forth the appropriate effort" during the testing process. She also noted that Dr. Macaulay concluded that Mr. Smith had "performed within normal limited on two of three objective effort measures," i.e., stand alone performance validity measures. Fiano report, at page 3.

96.     Dr. Fiano, based upon her review of the raw test data compiled by Dr. Macaulay, agreed that Mr. Smith "passed both of the… stand alone performance validity measures…." Fiano report, at page 4.

97.     Dr. Fiano also reported Dr. Macaulay's opinion that Mr. Smith's "test results were…valid" and "met diagnostic criteria for mild cognitive impairment, most consistent with the amnestic type." Fiano report, at page 4.

98.     Dr. Fiano also reported that in a psychiatric consultation performed by Dr. Jamison Rogers on March 24, 2017, Dr. Jamison concluded that Mr. Smith suffered the psychiatric illness of mild cognitive impairment. See Fiano report, at page 5, and Dr. Jamison examination report of March 24, 2017, at page 3.

99.     Dr. Fiano also reviewed Dr. Tremont's October 6, 2017 report, noting that Dr. Tremont concluded that Mr. Smith "did show moderate to severe impairment in psychomotor speed and learning and memory." Fiano report, at page 5.

100.    She also observed that although Dr. Tremont was concerned about the validity of the test results, he nevertheless made clear that his concern "did not rule out the possibility that… [Mr. Smith] had mild cognitive impairment. Fiano report, at page 5.

101.    Importantly, Dr. Fiano agreed that "the data would suggest mild cognitive impairment (as diagnosed by Dr. Macaulay)…[which] diagnosis is supported on a more likely than not basis…."

Fiano report, at page 6.

102.    Finally, and most revealing, Prudential never asked Dr. Fiano to address whether Mr. Smith could perform the duties of his own occupation.    See Policy, Long Term Disability Coverage, at page 20, definition of disability, drafted by Prudential.

103.    And Dr. Fiano did not address and did not answer that question.    Thus, her report offers no support for Prudential's denial of the payment of LTD benefits to Mr. Smith.

104.    Rather, Dr. Fiano's findings contradict that denial determination

105.    Nevertheless, Prudential determined that Mr. Smith did not "meet the definition of disability as defined in the...Policy[Plan] and...terminated...[his LTD]claim." See Prudential May 3, 2018 letter, at pages 1 and 6.

106.    In addition to now using Dr. Tremont's October 6, 2017 evaluation as a reason for denying Mr. Smith's LTD claim, which evaluation previously served as a basis for concluding that Mr. Smith had a valid LTD claim, Prudential also emphasized in its May 3, 2018 letter, at page 3, that "a psychiatric evaluation from March of 2017...did not document a psychiatric condition apart from mild cognitive impairment." Prudential thus rejected that a sickness, such as mild cognitive impairment, could support a finding of Mr. Smith's disability.  Instead, Prudential chooses to focus on a lack of a particular medical condition to improperly bolster its termination decision.

107.    It is also helpful to recall that when Prudential reinstated Mr. Smith's LTD benefits in November 2017, it had and considered Dr. Tremont's October 6, 2017 report when approving those benefits.

108.    Prudential repeatedly focuses on Dr. Fiano's finding of "no compelling support for a diagnosis of dementia..." See Prudential May 3, 2018 letter, at page 3 and, see also pages 4-5. Again, the Plan refers only to a "sickness," not a specific ailment, i.e., Mr. Smith did not have to

and does not have to prove that his inability to perform the duties of his own occupation is due to a particular psychiatric condition, such as dementia or alzheimer's. Mr. Smith need only show that a sickness, any sickness, such as mild cognitive impairment, from which he suffers, prevents him from performing the job duties of his own occupation.

109.    Further, Prudential engages in troubling conduct in challenging Dr. Barash's opinion and brushing aside Dr. Macaulay's findings of evidence of mild cognitive impairment because, as it says, the testing did not support any finding of dementia. Prudential May 3, 2018, letter at pages 3 and 5, and November 13, 2018 letter, at page 2. See also Smith MCI letters.

110.    Moreover, and troubling so, Prudential emphasized that Dr. Fiano's conclusion that the information Dr. Barash relied upon did not "support the conclusion that [Mr. Smith] could not return to work in any capacity…. See May 3, 2018 Prudential letter, at page 6 (emphasis added). But critically, Mr. Smith's return to work in any capacity is not the relevant criteria but, rather, the relevant criteria is Mr. Smith not being able to return to work in his "own occupation."

111.    In a series of letters sent in June and July 2018, Mr. Smith appealed Prudential's May 3, 2018 decision to terminate and disallow his claim for LTD benefits. Mr. Smith and Prudential then exchanged correspondence from July 2018 through November 2018 concerning the need by Prudential for additional medical records in order for it to consider Mr. Smith's appeal.

112.    By November 13, 2018, Mr. Smith had supplied Prudential the requested medical records.

113.    But before November 13, 2018, it seems that Prudential realized that: (1) Dr. Fiano did not support its denial of Mr. Smith's LTD benefit on the basis of Mr. Smith being able to perform the duties of his own occupation; (2) Dr. Tremont did not rule out that Mr. Smith suffered mild cognitive impairment, and (3) Dr. Fiano concluded that Dr. Macaulay's diagnosis of mild cognitive impairment was "reasonably supported…on a more likely than not basis."

16

114.    Although disappointing, it is not surprising that in September 2018, Prudential sought out other doctors that perhaps would help it justify its denial determination.

115.    It thus turned to yet another company which offered the services of doctors (R3 Continuum) to help it bolster its denial stance.  See Prudential's communications of September 12, 2018.

116.    Prudential had yet another neuropsychologist (Dr. Getz) and a neurologist (Dr. Lang) perform file reviews, but not examine Mr. Smith.

117.    Although Dr. Getz's and Dr. Lang's credentials are not in question, it is interesting to discover that an examination of their Curriculum Vitae reveals that Dr. Lang is not affiliated with any hospital and since 2013 he has served as a staff neurologist for R3 Continuum, while Dr. Getz also serves as a staff neurophysiologist for R3 Continuum.

118.    Dr. Getz conducts evaluations for, among other things, legal purposes, having conducted over 150 medical-legal evaluations.

119.    Dr. Getz also serves as reviewer for medical-legal purposes for Workers Compensation and disability claims (Dr. Getz Curriculum Vitae).

120.    Further, although R3 Continuum states on its Website (Exhibit B hereto) that an independent medical examination conducted by one of its panel members, such as those conducted by Drs. Getz and Lang, "typically consists of a face-to-face clinical interview of the employee; ...medical testing as appropriate...; physical examination... or mental status examination...; [and] conferring as needed with treatment providers," neither Dr. Getz nor Dr. Lang interviewed Mr. Smith, performed medical testing, or mental status examination or conferred with Mr. Smith's providers.  They only choose to conduct a "file review," Dr. Getz's and Dr. Lang's October 29, 2018 reports, at page 1.

121.    Additionally, Drs. Getz and Lang both stated in their October 29, 2018 reports, at page 2,

17

that they reviewed "Attorney Correspondence and/or legal documents." Those legal/attorney documents are not detailed as to date, author or subject matter. These documents relied upon by Drs. Getz and Lang were not provided to Mr. Smith. (They are, of course, relevant to Mr. Smith's claim.) See letter of Prudential of January 19, 2021, to Ms. Frost. The herein referenced documents were not sent to Ms. Frost. Prudential's failure to provide these documents prejudices plaintiff in his ability to pursue this civil action. See 29 U.S.C § 1133; 29 C.F.R. § 2560.503 – 1(h)(2)(iii); 1(i)(5); J(3); 1(m)(8)(i-iii); 29 U.S.C. § 1109. (Plaintiff reserves the right to ask the Court to permit it, if necessary, to conduct discovery as to the documents supplied to Drs. Getz and Lang by Prudential.)

122.    Further, Prudential directed Drs. Getz and Lang to consult with one another before completing their reports. Why did Prudential impose this requirement on Drs. Getz and Lang? See Prudential September 12, 2018 letters, at page 2.

123.    Indeed, Drs. Getz and Lang did engage in a "panel call" before they issued their October 29, 2018 reports. See Drs. Getz and Lang October 29, 2018 reports, page 2 of each report. It is not stated who else may have participated in that "panel call."

124.    Also of interest is that each of the doctors' reports, beginning with the first paragraph on page 1, to the last paragraph before "Case Summary" on page 2, is virtually identical.

125.    It is worth noting that in his report Dr. Getz recognizes that Dr. Macaulay, a board-certified psychologist, who examined Mr. Smith (neither Drs. Getz nor Lang bothered to), conducted twenty-four (24) psychological tests (Drs. Getz and Lang conducted no tests) and, in interpreting the results of her multiple tests, "she opined that the claimant [Mr. Smith] had mild cognitive impairment...." Dr. Getz October 29, 2018 report, at page 3.

126.    In addressing Dr. Macaulay's testing and her opinion based thereon, Dr. Getz admitted that he did not review her raw data and, thus, was "unable to determine if the claimant's [Mr.

18

Smith's] performance on the validity measure were sufficient" to support her determination that Mr. Smith suffered mild cognitive impairment.  In short, Dr. Getz admitted that he was not in a position to contest Dr. Macaulay's opinion.  Dr. Getz October 29, 2018 report, at pages 5-6.

127.    Dr. Getz also reported that although Dr. Tremont had a concern about the validity of test results, Dr. Tremont did "not rule out the possibility he [Mr. Smith] has MCI [Mild Cognitive Impairment.]"  Dr. Getz October 29, 2018 report, at page 4.

128.    Further, although Dr. Getz's opinion is that Mr. Smith "does not have functional impairment due to a psychological impairment," Dr. Getz October 29, 2018 report, at pages 6-7, he was not asked by Prudential to answer and he did not answer the question whether Mr. Smith is disabled as defined in the Plain, i.e., not able to perform the duties of his own occupation, the only relevant question.

129.    Moreover, Dr. Lang's October 29, 2018 report and the opinions expressed therein are not relevant to the disability issue at hand.

130.    On the very first page of his report, Dr. Lang echos Dr. Getz's opinion that Mr. Smith does not have ongoing neurological issues…which would translate into functional impairment…, compare to Dr. Getz's report, at pages 6-7, but, and significantly so, Dr. Lang then specifically explains his opinion by stating at page 5 of his October 29, 2018 report that Mr. Smith's has no condition which would preclude him from "work[ing] in any capacity…." (emphasis added)

131.    It would seem that Dr. Lang's more detailed explanation also applies to Dr. Getz's functional limitation opinion as expressed by Dr. Getz in his October 29, 2018 report, i.e., Mr. Smith has the ability to work in some capacity which, of course, is not the criteria set forth in the Plan.

132.    Dr. Lang never opines that Mr. Smith can perform the duties of his own occupation.

133.    Consequently, Dr. Lang's opinion, as expressed in his October 29, 2018 report, is neither

relevant nor supports Prudential's denial determination.

134.    Despite the fatal flaws in Drs. Fiano's, Getz's and Lang's opinions as to whether Mr. Smith is disabled under the Plan, Prudential did not address in its November 13, 2018 denial letter whether Mr. Smith could perform the duties of his own occupation.

135.    Prudential, by its letter of November 13, 2018, informed Mr. Smith that its May 3, 2018 decision to terminate his claim for LTD benefits was appropriate and was being upheld. At pages 1 and 6.

136.    Thereafter, Mr. Smith, in a series of letters in March, April and July 2019, appealed that November 13, 2018 denial decision of Prudential.

137.    Post October 29, 2018, additional records were supplied to Drs. Getz and Lang by Prudential, including Dr. Tremont's April 19, 2019 report.

138.    In two (2) reports issued by both doctors of the same dates, November 8, 2018, and August 20, 2019, both doctors state that their opinions as expressed in their previous reports had not changed.

139.    Indeed, Dr. Lang once again emphasized his opinion that "the claim that Mr. Smith is unable to work at all…" is not sustainable. At page 1, August 2019 report (emphasis added). Of course, this opinion is neither relevant nor supports Prudential's denial determination.

140.    Dr. Getz in his August 20, 2019 report, at page 2, admits that Dr. Tremont opined "that the claimant [Mr. Smith] met criteria for Mild Cognitive Impairment," as did Dr. Macaulay, Dr. Getz continues in what seems to be a strained effort to support Prudential's position, stating that Dr. Tremont observed that the "test results did not support a progressive dementia, such as Alzheimer's disease." Dr. Getz August 20, 2019 report, at page 2. But, Mr. Smith never said that he had alzheimer's disease and he did not have to have such a condition to be considered disabled under the Plan. See Smith MCI Letters.

141.     By letter of August 28, 2019, Prudential stated that, after providing additional medical records to Drs. Getz and Lang, Drs. Getz and Lang had not changed their opinions as set forth in their October 29, 2018, and November 8, 2018 reports.  Based on the doctors' reports and the other records referenced in its August 28, 2019 letter, including Dr. Tremont's April 2019 report, Prudential advised Mr. Smith that its decision of November 13, 2018 to terminate Mr. Smith's claim for LTD benefits was appropriate and it was upholding that decision. At pages 1 and 5.

142.     Prudential advised Mr. Smith that that denial determination was final and could not be appealed further to Prudential.  At page 5.

143.     In so doing, Prudential relied, in part, on Dr. Tremont's April 19, 2019 report.  That April 19, 2019 report is of significance, particularly since Prudential had earlier relied on Dr. Tremont's report of October 6, 2017, in approving Mr. Smith's claim. A careful review of Dr. Tremont's April 19, 2019 report proves instructive.

144.     Dr. Tremont noted in his 2019 report that Mr. Smith had a "complete work-up at the Lahey Clinic in August/September 2015…[and underwent] a comprehensive neuropsychological evaluation with Dr. Kaitlin Macaulay on 9/14/2015…[with] [r]esults show[ing] mild difficulties with multitasking, word finding, and delayed memory…." (emphasis added).  Dr. Tremont observed that Dr. Macaulay concluded that she "thought [her] [t]est results to be valid…[and] that he [Mr. Smith] met criteria for mild cognitive impairment, amnestic type." (At page 2) (Emphasis added)

145.     Dr. Tremont also observed in his report that a "[n]eurologic examination with Dr. Julie Roth on March 24, 2017, showed poor delayed recall, inattention, and possible frontal lobe dysfunction…." At page 2.

146.     Based upon two (2) performance tests, Dr. Tremont, reported that Mr. Smith "performed in the normal range on one measure…and in the impaired/fail range on several indices of the

21

other test…[raising the possibility] that [the] test results underestimated his true cognitive abilities." (At page 3)

147.    Nevertheless, Dr. Tremont opined that Mr. Smith's performance was consistent with Mild Cognitive Impairment. April 29, 2019 report, at page 3.

148.    Although Dr. Tremont could not determine the cause of Mr. Smith's defects, he noted that the cognitive impairment could be caused by "the effects of cerebrovascular disease, inconsistent effort on the current exam…or some other non-Alzheimer's pathology." That is, Dr. Tremont could not and did not rule out that Mr. Smith had mild cognitive impairment, of the amnestic type, as concluded by Dr. Macaulay. Dr. Tremont's April 19, 2019 report, at pages 2-3.

149.    Dr. Tremont did not state that Dr. Macaulay's opinion that Mr. Smith is suffering from mild cognitive impairment is wrong.

150.    Dr. Tremont did not state that Mr. Smith is not suffering from mild cognitive impairment.

151.    Prudential's misguided emphasis upon Dr. Tremont's irrelevant observation that Mr. Smith's medical records "did not support a progressive dementia, such as alzheimer's disease," highlights and exposes the erroneous denial determination of Prudential.

152.    Moreover, it is not without significance and ought be considered by the Court, that Cigna approved Mr. Smith's claim for LTD benefits under his Cigna insurance policy, which policy has a virtually identical definition of "disabled," to wit, "because of injury or sickness the Employee is unable to perform the material duties of his or her regular occupation…." See two (2) Cigna letters dated February 19, 2016, (Collectively marked as Exhibit E.)

## Count I

### Breach of Duty of Prudential Insurance Company

153.    The averments set forth in paragraphs 1 through 152 of the Complaint are herein incorporated by reference.

154.    In denying Mr. Smith's claim for LTD benefits, Prudential breached the fiduciary duty owed by it to Mr. Smith and Prudential made an erroneous disability determination.

155.    As a result of Prudential's: (a) structural deficit; (b) its sharp conduct, which violated its duty to act faithfully and in good faith solely in the interest of Mr. Smith, a participant and beneficiary of the Plan, and for the exclusive purpose of providing LTD benefits to Mr. Smith; (c) its failure to provide relevant documents thereby prejudicing Mr. Smith; (d) making misleading statements to it's retained experts; (e) misreading the Plan definition of disability; (f) imposing questionable requirements on its retained experts; and (g) pursuant to R.I.G.L. § 27-18-1 and 27-18-79(a), any claim by Prudential that its decision to terminate Mr. Smith's LTD benefits be determined under a discretionary standard should be rejected.

Wherefore, for the above reasons, Plaintiff Mr. Smith respectfully requests that the Honorable Court enter judgment against defendant Prudential Insurance Company of America and in his favor on his Complaint and rule and grant the following relief:

(a)    that defendant Prudential Insurance Company of America erred in terminating Mr. Smith's LTD benefits;

(b)    that defendant Prudential Insurance Company of America breached the fiduciary duty owed by it to Mr. Smith;

(c)    that defendant Prudential Insurance Company of America is to reinstate Mr. Smith's LTD benefits under the Plan from the date of its termination, May 3, 2018, and continue to pay those benefits, $3,000.00/month for the time period May 3, 2018, to October 1, 2028, when Mr. Smith reaches 67, as provided for in the Plan;

(d)    that defendant Prudential Insurance Company of America pay interest on all the LTD benefits that should have been paid to Mr. Smith for the time from May 3, 2018, until said defendant resumes payment of such LTD benefits;

(e) that defendant Prudential Insurance Company of America be found liable to plaintiff Mr. Smith for statutory penalties in an amount the Court deems just;

(f) that the Prudential Insurance Company of America be ordered to pay the attorney fees and expenses incurred by Mr. Smith in prosecuting this civil action; and

(g) such any other relief the Court deems just and fair.

## Count II

### Attorney Fees and Statutory Penalties

156.    The averments of paragraphs 1 though 155 of the Complaint are herein incorporated by reference.

157.    The pervasive misconduct of Prudential, above set forth, supports the grant of an award of all of Mr. Smith's attorney fees.

158.    Further, such most unfortunate conduct supports the imposition of significant statutory penalties in order to punish Prudential and deter it and others from engaging in such dubious conduct.

159.    The egregious misconduct of Prudential includes, but is not limited to: (a) not providing relevant claim file documents despite a written request to do so, e.g., "Attorney correspondence and/or legal documents," provided to the Prudential's retained doctors to be used by them in formulating their opinions and reports; **(b)** imposing requirements on its treating doctors that they confer before issuing their reports; (c) misstating the opinions of Mr. Smith's treating doctors to its retained doctors; (d) misstating to its retained doctors that Mr. Smith's disability claim was based upon a finding of a specific medical conduction, such as dementia, when Mr. Smith repeatedly stated that his claim was based upon his suffering mild cognitive impairment; (e) misstating to Mr. Smith that he need to suffer a specific medical condition, such as dementia, in order to be found disabled, when the Plan does not so require; (f) misstating to Mr. Smith that

because he was not prevented from working in some "capacity" or "at all" that he was not disabled under the Plan, when the Plan only requires that he not be able to perform the duties of his <u>own</u> occupation; and (g) basing its denial of Mr. Smith's claim on criteria not contained in the Plan and thereby ignoring the clear, certain and unambiguous terms of the Plan which it drafted.

Wherefore, for the reasons set for in the Complaint, Plaintiff Mr. Smith respectfully requests that the Honorable Court enter judgment against defendant Prudential Insurance Company of America and in his favor on his Complaint and rule and grant, in addition to the above-requested relief, the following relief:

(a)     an award reimbursing Plaintiff Mr. Smith for all his attorney fees and Court costs incurred by him in prosecuting this civil action;

(b)     a substantial award of statutory penalties in an amount the Court deems proper and just; and

(c)     such other relief the Court deems just and fair.

Plaintiff,

Brian Smith,

By his attorney,

/s/ George E. Lieberman
George E. Lieberman, Esq. (#3860)
Of Counsel
GIANFRANCESCO & FRIEDEMANN, LLP
214 Broadway
Providence, Rhode Island 02903
Tel:(401) 270-0070
Fax:(401) 270-0074
george@gianfrancescolaw.com